IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: | ) |
| | ) |
| BIG DRIVE CATTLE, L.L.C., | ) |
| | ) CASE NO. BK11-42415 |
| Debtor(s). | ) A13-4040 |
| JAMES A. OVERCASH, Chapter 11 Trustee, | ) |
| | ) |
| Plaintiff, | ) CHAPTER 11 |
| | ) |
| vs. | ) |
| | ) |
| CAROL KNISLEY, | ) |
| | ) |
| Defendant. | ) |

ORDER

This matter is before the court on cross-motions for summary judgment by the plaintiff (Fil. No. 23) and the defendant (Fil. No. 12). James A. Overcash, the Chapter 11 trustee for this case, represents himself, and Daniel F. Church represents the defendant. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motions were taken under advisement without oral arguments.

The bankruptcy trustee for Big Drive Cattle, L.L.C. filed this adversary proceeding to recover alleged preferential transfers totaling $836,066.64 from the defendant. The defendant asserts that the transfers were of funds held in bailment for him as proceeds from the sale of cattle owned by him but fed at the feedlot operated by the debtor and sold by the debtor on his behalf to third parties.

The defendant's motion is denied. The trustee's motion is granted.

The parties agree on the following facts for purposes of these motions only:

1. Big Drive Cattle, L.L.C. ("BDC") operates a commercial cattle feedlot.

2. BDC had three loans with Farm Credit Services of America ("FCSA"). One was secured by real estate and two were secured by personal property.

3. The maximum amount of the FCSA operating line of credit was $1.5 million. Overdraft charges were assessed if the loan amount exceeded that maximum. FCSA also rejected some drafts that were presented for payment and caused the loan amount to exceed the maximum.

    4. Defendant Carol Knisley has held an equity membership interest in BDC since its inception in or around February 2009. He is an insider for purposes of this matter.

    5. From at least February 2009 until December 2, 2010, Mr. Knisley purchased cattle and shipped them to BDC to be fed until they met certain weight requirements.

    6. When the cattle reached an appropriate size and weight, they were sold by BDC.

    7. Mr. Knisley and BDC had an agreement by which BDC was to take physical custody and control of the cattle owned by Mr. Knisley, feed them, and sell them to third parties when the cattle reached an appropriate weight.

    8. Upon the sale of the cattle, BDC would deposit the funds received with FCSA. BDC did not have a deposit or checking account with this entity.

    9. The funds deposited with FCSA were applied to the amount of money owed by BDC to FCSA.

    10. BDC calculated the cost of the feed for Mr. Knisley's cattle and deducted that amount from the sale proceeds BDC paid to Mr. Knisley.

    11. At no time did Mr. Knisley transfer or intend to transfer legal title or ownership in those cattle to BDC.

    12. In October 2009, cattle owned by Mr. Knisley were shipped into Lot 155 at BDC's feedlot. On or about September 2, 2010, BDC, on behalf of Mr. Knisley pursuant to their agreement, sold 123 head of Mr. Knisley's cattle to Tyson.

    13. Tyson purchased 123 head of cattle owned by Mr. Knisley in Lot 155 for a total of $136,610.52. On October 20, 2010, BDC issued a draft for $121,433.63 to Mr. Knisley.

    14. In November 2009, cattle owned by Mr. Knisley were shipped into Lot 170 at BDC's feedlot. On or about the period from September 3, 2010, to November 12, 2010, BDC, on behalf of Mr. Knisley pursuant to their agreement, sold 312 head of Mr. Knisley's cattle to Tyson, Platte River By-Product, Stockmen's, and JBS Swift.

    15. Tyson, Platte River By-Product, Stockmen's, and JBS Swift purchased 312 head of Mr. Knisley's cattle from Lot 170 for a total of $347,084.99. BDC issued a draft for this amount to Mr. Knisley on December 2, 2010.

    16. On or about December 17, 2009, cattle owned by Mr. Knisley were shipped into Lot 181 at BDC's feedlot. On or about September 2, 2010, BDC, on behalf of Mr. Knisley pursuant to their agreement, sold 29 head of Mr. Knisley's cattle to Tyson.

17. Tyson purchased 29 head of Mr. Knisley's cattle from Lot 181 for a total of $32,208.99. BDC issued a draft for $31,735.99 to Mr. Knisley on October 20, 2010.

18. On or about January 25, 2010, cattle owned by Mr. Knisley were shipped into Lot 203 at BDC's feedlot. On or about September 2, 2010, BDC, on behalf of Mr. Knisley pursuant to their agreement, sold 149 head of Mr. Knisley's cattle to Tyson.

19. Tyson purchased 149 head of Mr. Knisley's cattle from Lot 203 for a total of $165,487.60. BDC issued a draft for $136,823.92 to Mr. Knisley on October 20, 2010.

20. On or about March 2010, cattle owned by Mr. Knisley were shipped into Lot 238 at BDC's feedlot. On or about September 8, 2010, BDC, on behalf of Mr. Knisley pursuant to their agreement, sold 146 head of Mr. Knisley's cattle to Tyson.

21. Tyson purchased 146 head of Mr. Knisley's cattle from Lot 238 for a total of $152,408.74. BDC issued a draft for $113,408.74 to Mr. Knisley on November 15, 2010.

22. BDC made the following transfers to Mr. Knisley:

| **Draft Number** | **Date of Draft** | **Date Draft Presented for Payment** | **Did Draft Presentation Cause Overdraft or Rejection?** | **Amount of Draft** |
|---|---|---|---|---|
| 8322 | 10/20/2010 | 10/27/2010 | Overdraft | $121,433.63 |
| 8323 | 10/20/2010 | 10/27/2010 | Overdraft | $31,735.99 |
| 8324 | 10/20/2010 | 10/27/2010 | Overdraft | $136,823.92 |
| 8534 | 11/15/2010 | 11/17/2010 | No | $113,408.74 |
| 8816 | 12/02/2010 | First: 12/17/2010 | Rejected | $347,084.99 |
|  |  | Second: 12/22/2010 | Overdraft |  |
|  |  |  | **TOTAL** | $750,487.27 |

23. BDC was insolvent at the time the transfers were made.

24. BDC filed a petition for relief under Chapter 11 of the Bankruptcy Code on September 9, 2011.

25. James A. Overcash was appointed as trustee of BDC's bankruptcy case on February 8, 2013.

-3-

26. BDC's unsecured creditors have been paid approximately 51 percent of their claim amounts.

27. The trustee filed this adversary complaint on July 31, 2013.

28. This court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334.

29. Venue in this court is appropriate under 28 U.S.C. § 1409.

30. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

31. The parties consent to entry of a final judgment by the bankruptcy court.

The Eighth Circuit Court of Appeals has explained the preferential payment analysis as follows:

> "Under the Bankruptcy Code's preference avoidance section, 11 U.S.C. § 547, the trustee is permitted to recover, with certain exceptions, transfers of property made by the debtor within 90 days before the date the bankruptcy petition was filed." *Barnhill v. Johnson*, 503 U.S. 393, 394, 112 S. Ct. 1386, 118 L. Ed. 2d 39 (1992). "This rule 'is intended to discourage creditors from racing to dismember a debtor sliding into bankruptcy and to promote equality of distribution to creditors in bankruptcy.'" *Lindquist v. Dorholt (In re Dorholt, Inc.)*, 224 F.3d 871, 873 (8th Cir. 2000) (quoting *Jones Truck Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund (In re Jones Truck Lines, Inc.)*, 130 F.3d 323, 326 (8th Cir. 1997)).
>
> "Title 11 U.S.C. § 547(b) requires that in order for a transfer to be subject to avoidance as a preference, (1) there must be a transfer of an interest of the debtor in property, (2) on account of an antecedent debt, (3) to or for the benefit of a creditor, (4) made while the debtor was insolvent, (5) within 90 days prior to the commencement of the bankruptcy case, (6) that left the creditor better off than it would have been if the transfer had not been made and the creditor asserted its claim in a Chapter 7 liquidation." *Buckley v. Jeld-Wen, Inc. (In re Interior Wood Prods. Co.)*, 986 F.2d 228, 230 (8th Cir. 1993). The trustee must establish each of these elements by a preponderance of the evidence. *Stingley v. AlliedSignal, Inc. (In re Libby Int'l, Inc.)*, 247 B.R. 463, 466 (8th Cir. B.A.P. 2000).

*Wells Fargo Home Mortgage, Inc. v. Lindquist*, 592 F.3d 838, 842 (8th Cir. 2010). The "look-back" period for transfers is extended to one year in this case because Mr. Knisley is an insider. § 547(b)(4)(B).

Here, the trustee considers the payments to be preferences because the funds were deposited into BDC's Farm Credit Services' loan account, rather than into a standard bank-based checking account. The account was a revolving line of credit, so all deposits were considered payments on BDC's loan, and when the lender honored drafts written on the account, they were considered advances on the loan.

Mr. Knisley concedes that the cattle sale proceeds were applied as payments on BDC's loan, but contends that the balance owed to him after payment of the feed expenses was always "held in trust" for him. He challenges the first element of the preference analysis – that the debtor had an interest in the property transferred – by stating that the cattle and the proceeds were held by BDC as a bailment and Mr. Knisley at no time transferred or intended to transfer any legal title or ownership interest in the cattle or in the proceeds of the sale of the cattle.

The parties may indeed have intended that BDC's role in the sale of Mr. Knisley's cattle would be as his agent, receiving the sale proceeds on his behalf, deducting the amount owed for feed, and remitting the remainder to him. However, as a practical matter, when BDC faced having to pay debts with an insufficient amount of income, good intentions fell by the wayside. The cattle checks were deposited into BDC's FCSA account and commingled with other funds. The delay in paying Mr. Knisley created a debt to him. The proceeds of the sale of Mr. Knisley's cattle were not segregated for him. They went into the same pot of money with the proceeds of the sale of cattle belonging to other people, and they were used to pay debts other than what BDC owed to Mr. Knisley. As the Eighth Circuit Court of Appeals has observed in determining that the proceeds of items sold by an auction company became property of the auction company before being paid to the sellers,

> once the funds were commingled and it became impossible to actually trace the principal's own money, the relationship had to be treated as a creditor-debtor relationship under the Bankruptcy Code with respect to those disputed funds. *Accord* 4 Collier ¶ 541.08, at 541-47 ("In a true consignment arrangement, bailment, or agency, recovery by the bailor, principal, or consignor rests upon identification. When the property involved, or its proceeds, has been intermingled with other goods or funds of the debtor's, the owner must definitely trace that which he claims as contained in the assets of the estate.").

*Rine & Rine Auctioneers, Inc. v. Douglas County Bank & Tr. Co. (In re Rine & Rine Auctioneers, Inc.*, 74 F.3d 854, 860 (8th Cir. 1996).

The proceeds deposited into BDC's account are not traceable as belonging to Mr. Knisley. Those funds were commingled with the other funds in the loan account and were expended for debts other than those owed to Mr. Knisley in the intervening weeks.

Mr. Knisley suggests that a constructive trust should be imposed on the funds owed to him. While courts generally are not empowered to modify the priority scheme as developed by Congress and set forth in the Bankruptcy Code, the Eighth Circuit does permit constructive trusts to be created

in bankruptcy cases in carefully circumscribed circumstances. "[I]n the Eighth Circuit there are at least two requirements before a constructive trust can be imposed: the debtor's misconduct allows principles of equity to override legal considerations, and the contest is between a creditor and the debtor, not among creditors." *Kunkel v. Ries (In re Morken)*, 199 B.R. 940, 965 (Bankr. D. Minn. 1996); *Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.)*, 286 B.R. 109, 128 n.18 (Bankr. D. Minn. 2002). These requirements do not exist here. Mr. Knisley is one of a number of creditors seeking payment from a limited amount of assets and the imposition of a constructive trust would be unfairly prejudicial to those other creditors.

The trustee has established that within one year before BDC filed its bankruptcy petition, Mr. Knisley received transfers of funds that had become BDC's property, in payment of debts owed by BDC to him, while BDC was insolvent, and that enabled him to receive more than other unsecured creditors did or will. Because the transfers at issue here were clearly preferential, judgment will be granted for the trustee.

IT IS ORDERED: The plaintiff's motion for summary judgment (Fil. No. 23) is granted. The defendant's motion for summary judgment (Fil. No. 12) is denied. Separate judgment will be entered.

DATED: February 20, 2014.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
    *James A. Overcash
    *Daniel F. Church
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.